**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KAILYN FLETCHER** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER: 23-1344** |
| **UNITED STATES POSTAL SERVICE, ET AL.** | **DIVISION "5"** |

## ORDER

Before the Court is the Motion to Dismiss and Motion for Partial Summary Judgment (rec. doc. 16) filed by Defendants, the United States Postal Service ("USPS") and Louis DeJoy, Postmaster General (collectively, "Defendants"). Plaintiff Kailyn Fletcher opposes the motion. (Rec. doc. 20). Having reviewed the pleadings and the case law, the Court rules as follows.

### I.      Factual Background

Plaintiff, a gay, African-American female, began her employment with the United States Postal Service in Covington, Louisiana on June 26, 2018. (Rec doc. 1 at 3). Plaintiff's Complaint alleges that she was wrongfully terminated from the United States Postal Service on two occasions. The first termination occurred on June 23, 2019. (*Id.*). The reasons for Plaintiff's first termination are described by her as "1. Repeated attendance deficiencies resulting in corrective actions to include a Letter of Warning and a 7 Day Suspension. 2. Unacceptable performance issues, including the failure to follow instructions, and co-workers' complaints" and any "attempts to correct this behavior have proven unsuccessful." (*Id.*).

After the first termination, Plaintiff submitted a formal complaint of discrimination to the Equal Employment Opportunity Commission ("EEOC") division of the USPS. (*Id.* at 9). Plaintiff's 2019 complaint addressed the disparate treatment of Plaintiff, including

subjecting her to "split shift" scheduling;[1] not permitting her to work the window by her supervisor because of her tattoos and hairstyle; obstructing her advancement opportunities by scheduling her to work just before her window test; threats of being fired; comments that her supervisors did not like her; derogatory comments about gay women that were condoned by supervisors; and unwarranted write-ups for attendance issues. (*Id.* at 3-9).

After filing her complaint, Plaintiff was reinstated in September 2019 as a result of an agreement between the parties. (*Id.* at 9). As part of that agreement, Plaintiff was to receive back pay in the amount of $10,000.00 in October 2019. (*Id.*). Despite repeated requests, Defendants refused to provide her back pay until almost nine months later. (*Id.*).

After returning to work in September 2019, Plaintiff alleges that she was reprimanded for violations of rules of which she had no knowledge. One of which was the requirement to work a 12-hour day every Monday. (*Id.* at 10). Plaintiff was also allegedly subject to restrictions that were not imposed on other employees. These included the following: Plaintiff was required to check in with a supervisor before leaving work each day (*id.*); she was required to inform her supervisor each time she had to use the restroom (*id.* at 18); and she was required to bring medical documentation when she had to leave work early for an illness which was visibly apparent to her supervisors. (*Id.* at 11). In addition, Plaintiff was followed by her male supervisor each time she went to the restroom, where he would wait outside the door until she finished and exited (*id.*); she was yelled at by her supervisor in the presence of customers for wearing an earbud and was later written up for

---

[1] "Split shift scheduling" is the imposition of a two- to four-hour break, without pay, in the middle of the day. (Rec. doc. 20 at 3).

it as well (*id.* at 12-14); and she was accused by her supervisors of falsifying medical documentation. (*Id.* at 16).

Plaintiff alleges that Torrey Harris, the Postmaster at the Covington Post Office, called Richard Harlow, an agent with the Baton Rouge Office of the Inspector General ("OIG"), to assist in terminating Plaintiff's employment. (*Id.* at 18-19). She alleges that it is the policy and practice of the Covington Post Office to contact the New Orleans OIG – not the OIG in Baton Rouge. (*Id.*). However, Harlow of the Baton Rouge Office was Harris's personal friend. (*Id.*).

Harlow later stated that Harris had asked him to come sit in the parking lot of the Covington Post Office because of the danger that had been created by the Black Lives Matter protests. (*Id.* at 19). Harris, on the other hand, stated that he had asked Harlow to come surveil Plaintiff because she was trafficking narcotics in the post office parking lot. (*Id.*).

Harlow conducted covert surveillance in the parking lot of the Covington Post Office on June 29, 2020. (*Id.* at 18-19). On that day, Plaintiff was sitting in her car and eating her lunch. (*Id.* at 18). The windows in Plaintiff's car were very darkly tinted. (*Id.* at 19). Harlow, sitting in his own car across the parking lot, claimed that he saw Plaintiff through her window, engaging in criminal activity. (*Id.*).

Harlow came over and knocked on Plaintiff's car window. (*Id.*). He allegedly demanded that Plaintiff identify herself, told her that he was conducting surveillance because of the Black Lives Matter protests, and stated that she looked suspicious. (*Id.*). Harlow stated that he did not have any way of knowing that Plaintiff was a Postal Services

employee, opining that she could have ordered her Postal Services uniform on Ebay.  (*Id.* at 20).

Plaintiff claims that Harlow ordered her out of the car and searched her vehicle, informing her that he did not need her consent to do so.  (*Id.* at 20).  After about ten minutes of searching, Harlow stated that he had found some bags containing marijuana.  (*Id.* at 20-21).  Harlow later reported that he had seen the bags of marijuana through the window of the vehicle in plain view on the seat.  (*Id.* at 21).

According to Plaintiff, Harris stood by and observed Harlow during the entirety of the search, several times telling Plaintiff, "[F]inally, I got you."  (*Id.*).  Both Harris and Harlow allegedly ignored Plaintiff's requests to have a union representative present.  (*Id.* at 20).  Either Harris or Harlow then called the police.  (*Id.* at 21).

The police cited Plaintiff for possession of marijuana.  (*Id.*).  Plaintiff asked Harris to drug test her.  (*Id.*).  Harris refused.  (*Id.*).  Plaintiff claims Harris told the responding officer that her driver's license was suspended when it was not and also urged the responding officer to write her a ticket for her expired vehicle inspection sticker.  (*Id.* at 21-22).  Later, while the criminal charge against Plaintiff was pending, Harris visited the District Attorney's office and urged them to file felony drug trafficking charges against Plaintiff.  (*Id.* at 22).  Plaintiff was then terminated a second time in July 2020.  (*Id.* at 10).

After Plaintiff filed a second complaint with the EEOC, and the Administrative Law Judge stayed that complaint, Plaintiff sued Defendants in this Court.  (*Id.* at 22).  Plaintiff seeks redress under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, and Louisiana state law for retaliatory discharge.

## II.     The Motion to Dismiss

### A.     Legal Standard

Defendants move to dismiss Plaintiff's claims under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).   "Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims."   *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012).   A motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) challenges a federal court's subject-matter jurisdiction.   Fed. R. Civ. P. 12(b)(1).   Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."   *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted).   "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts."   *In re FEMA*, 668 F.3d at 287.   "When, as here, grounds for dismissal may exist under both Rule 12(b)(1) and Rule 12(b)(6), the Court should, if necessary, dismiss only under the former without reaching the question of failure to state a claim."   *Valdery v. La. Workforce Comm'n*, No. Civ. A. 15-01547, 2015 WL 5307390, at *1 (E.D. La. Sept. 10, 2015).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted.   Such a motion is rarely granted because it is viewed with disfavor.   *See Lowrey v. Tex. A & M Univ.*

*Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." *See Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502 (5th Cir. 2014) (citing *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc)). But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. *Id.* at 502-03 (citing *Iqbal*, 556 U.S. at 678).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more

than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotations omitted) (citing *Twombly*, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief,'" thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citation omitted).

Finally, "[w]hen reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). If the Court considers materials outside of the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *Phoenix on behalf of S.W. v. Lafourche Par. Gov't*, No. CV 19-13004, 2021 WL 184909, at *3-4 (E.D. La. Jan. 19, 2021); *see also* Fed. R. Civ. P. 12(d).

### B.     Claims Against the USPS

Defendants first argue that Plaintiff fails to state a claim against the USPS because under Title VII, "the head of the department, agency, or unit, as appropriate, shall be the

defendant." 42 U.S.C. § 2000e-16(c). Plaintiff does not oppose the dismissal of the USPS. Accordingly, all claims against the USPS shall be dismissed with prejudice.

### C.   Plaintiff's State-Law Claims

Defendants also argue that Plaintiff's state-law claims are preempted by Title VII, and this Court therefore lacks jurisdiction to hear them. Plaintiff does not counter this argument.

It is well settled that Title VII provides the exclusive and preemptive remedy for claims of discrimination in *federal employment*. *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976) ("[T]he established principle leads unerringly to the conclusion that § 717 of the Civil Rights Act of 1964, as amended, provides the exclusive judicial remedy for claims of discrimination in federal employment."); *Rowe v. Sullivan*, 967 F.2d 186, 189 (5th Cir. 1992). *Brown* stands for the proposition that when a complaint against a federal employer relies on the same facts to establish a Title VII claim and a non-Title VII claim, the non-Title VII claim is "not sufficiently distinct to avoid" preemption. *Rowe*, 967 F.2d at 189; *Pfau v. Reed*, 125 F.3d 927, 932 (5th Cir. 1997), *vacated and remanded on other grounds*, 525 U.S. 801 (1998), *holding reinstated*, 167 F.3d 228, 229 (5th Cir. 1999). Accordingly, when the same set of facts supports a Title VII claim and a non-Title VII claim against a federal employer, Title VII preempts the non-Title VII claim. *Pfau*, 125 F.3d at 933.

Here, Plaintiff relies on the same facts to support both her Title VII claim and her state-law claim. (Rec. doc. 1 at ¶¶ 8, 180). The Court thus lacks jurisdiction to hear Plaintiff's state-law claim. *See Smith v. Harvey*, 265 F. App'x 197, 200 (5th Cir. 2008) (affirming dismissal under Rule 12(b)(1) for lack of jurisdiction when Title VII preempted

state tort and 42 U.S.C. § 1981 claims).  Accordingly, this Court will dismiss Plaintiff's state-law claim without prejudice for lack of subject-matter jurisdiction.

### III.    Motion for Partial Summary Judgment

#### A.    Legal Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.*  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact.  *Id.* at 323.  If the moving party meets that burden, then the nonmoving party must marshal evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact.  *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The substantive law identifies those facts that are material.  *Id.*  Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th

Cir. 2014).  "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment.  *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994).  In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence.  *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Further, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment.  *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001).  A court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial.  *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2).  Such facts must create more than "some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden.  *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B).  Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted.  *See Little*, 37 F.3d at 1075-76.

10

**B.      Plaintiff's Claims Before September 23, 2019**

Defendants argue that all claims arising before September 23, 2019 are barred by a settlement agreement between the parties.  Defendants note that Plaintiff's Complaint includes workplace grievances that began in July 2018 and continued through June 23, 2019, the day Defendants first terminated her.  Plaintiff admits that she returned to work on September 23, 2019 pursuant to an agreement between the parties.

That agreement included a stipulation that Plaintiff voluntarily waived her right to bring all claims, including EEOC claims, whether known or not, arising out of her employment up to the date of the agreement.  (Rec. doc. 16-3 at 3).  Plaintiff also agreed to waive all claims arising out of her EEOC administrative complaint No. 4G-700-0137-19. (Rec. doc. 16-4 at 12).  The claims in that administrative complaint spanned July 2018 through June 2019.  (*Id.* at 7-12).  Both Plaintiff and her union representative agreed to and signed the September agreement.  (Rec. doc. 16-3 at 3).  The USPS agreed to allow Plaintiff to return to work and pay her $10,000.00 in back pay.  (*Id.*).  Defendants thus maintain that any claims arising before September 23, 2019 are barred.

Plaintiff does not dispute this argument.  (Re. doc. 20 at 10).  Neither does she seek to allege a violation under the "continuing violations" doctrine.  (*Id.*).  However, Plaintiff maintains that

> the facts and circumstances of Plaintiff's employment history, which spanned the approximately two-year period of time between June 26, 2018 and July 2020, are certainly relevant to Plaintiff's employer's motivation.  These facts are therefore properly asserted and included in Plaintiff's complaint as background evidence, in support of Plaintiff's retaliation claim, and insofar as they are relevant to Plaintiff's employer's motivation.

(*Id.* at 11).  In other words, Plaintiff does not seek monetary redress for any violation occurring before September 23, 2019, but she does seek to introduce any allegedly

discriminatory acts during that time period as evidence relevant to support her claims. This argument has merit.

In *National Railroad Passenger Corp. v. Morgan*, the Supreme Court extrapolated on its law as relevant to Plaintiff's argument:

> In *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S. Ct. 1885, 52 L. Ed. 2d 571 (1977), United forced Evans to resign after she married because of its policy against married female flight attendants.  Although Evans failed to file a timely charge following her initial separation, she nonetheless claimed that United was guilty of a present, continuing violation of Title VII because its seniority system failed to give her credit for her prior service once she was rehired.  The Court disagreed, concluding that "United was entitled to treat [Evans' resignation] as lawful after [she] failed to file a charge of discrimination within the" charge filing period then allowed by the statute. *Id.*, at 558, 97 S. Ct. 1885.  *At the same time, however, the Court noted that "[i]t may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue."  Ibid.*

536 U.S. 101, 112 (2002) (emphasis added).

Accordingly, while the Court finds that Plaintiff may not seek monetary redress for claims that arose before September 23, 2019, the Court finds that Supreme Court precedent does not bar Plaintiff from introducing evidence of acts that occurred before September 23, 2019 to support her Title VII claim.  In short, the Court grants Defendants' motion for summary judgment as to claims arising before September 23, 2019 but reserves the right to Plaintiff to present at trial, if necessary, evidence of acts that occurred before September 23, 2019 to support her Title VII claim of retaliatory discharge.

### C.     Plaintiff's Third Administrative Complaint

Defendants contend that Plaintiff's Title VII claim should be limited to certain allegedly discriminatory acts in her third administrative complaint, No. 4G-700-0224-20, as those are the only claims that Plaintiff timely exhausted.  While Plaintiff argues that she has

sufficiently pleaded a Title VII retaliation claim, she does not specifically address whether her claims for redress should be limited to claims in her third administrative complaint.

It is well established that employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996). Although filing of an EEOC charge is not a jurisdictional prerequisite, it "is a precondition to filing suit in district court." *Id.* at 789.

"The specific procedures for seeking agency relief . . . are set by the [EEOC] pursuant to its authority to 'issue such rules, regulations, orders, and instructions as it deems necessary to carry out its responsibilities.'" *Vera v. McHugh*, 622 F.3d 17, 29 (1st Cir. 2010). The EEOC is responsible for "establishing the mechanisms and deadlines for employees to initiate the administrative process for claims based on discrimination encompassed within Title VII." *Rojas v. Principi*, 326 F. Supp. 2d 267, 273 (D.P.R. 2004) (citing 42 U.S.C. § 2000e-16(b)). Before a *federal* civil servant can sue her employer in court for discriminating against her in violation of Title VII, she must first exhaust her administrative remedies through a different procedure than that which regulates non-federal civil servants. 42 U.S.C. § 2000e-16(c). To exhaust these remedies, the EEOC has promulgated regulations that require, among other things, that a federal employee consult with an EEOC counselor prior to filing a discrimination lawsuit. Specifically, she "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 CFR § 1614.105(a)(1); *Green v. Brennan*, 578 U.S. 547, 552-53 (2016); *Reynoso v. DeJoy*, 658 F.

Supp. 3d 10, 17 (D.P.R. 2023).  The EEOC "shall dismiss an entire complaint" when, among other reasons, it "fails to comply with the applicable time limits contained in [Section 1614.105]."  29 C.F.R. § 1614.107(a)(2).

Once an administrative EEOC complaint is dismissed, the aggrieved party may file an appeal pursuant to Section 1614.110(a) or may choose to file a civil action in federal court.  29 C.F.R. §§ 1614.401, 1614.407.  The civil action must be filed "[w]ithin 90 days of receipt of the agency['s] final action on an individual . . . complaint."   29 C.F.R. § 1614.407(a).

In employment discrimination cases, the scope of the civil complaint is limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge.  *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)) (quotations omitted)..  "With limited exception. . ., the failure to exhaust this administrative process 'bars the courthouse door.'"  *Franceschi v. U.S. Dep't of Vet. Affairs*, 514 F.3d 81, 85 (1st Cir. 2008) (citing *Bonilla v. Muebles J.J. Álvarez, Inc.*, 194 F.3d 275, 278 (1st Cir. 1999)).

Plaintiff filed three administrative complaints with the EEOC based on her employment with Defendants.  (Rec. doc. 16-4 at ¶ 4).  Plaintiff settled her first administrative complaint and voluntarily withdrew her second.  (*Id.* at ¶¶ 8, 11).  These two administrative complaints were not part of the EEOC's investigation.  As such, there is no genuine issue of material fact that the claims within these two complaints remain unexhausted.

Plaintiff's third administrative complaint included 18 claims.  (Rec. doc. 16-4 at 32-37).  The USPS dismissed three of the claims (Nos. 11, 13, and 14) and confirmed that they

would not be part of its investigation because it found that they represented an improper collateral attack on the negotiated grievance-arbitration process.  (*Id.* at 35).  Defendants also note that both parties confirmed that Claim No. 18 warranted dismissal because it had been withdrawn.  It too was not a part of the agency's investigation.

An EEOC complaint defines the scope of investigation, and by extension the scope of claims that may be filed in federal court.  *Moore v. DeJoy*, 600 F. Supp. 3d 332, 341 (S.D.N.Y. 2022), *appeal dismissed* (Dec. 2, 2022); *see, e.g., Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 23-24 (2d Cir. 1985) ("No action based on a claim of age discrimination may be brought unless the claim was properly raised with the EEOC . . . *and [is] within the scope of the investigation reasonably expected to grow out of that filing.*" (emphasis added)).  Because Claim Nos. 11, 13, 14, and 18 were dismissed by the agency and/or the parties and were explicitly excluded from the agency's investigation, Plaintiff failed to exhaust these claims. *See, e.g., Alabbassi v. Whitley*, No. 21-20070, 2022 WL 101975, at *2 (5th Cir. Jan. 11, 2022) (upholding district court's dismissal of claims when "the EEOC did not accept his claims and dismissed them as untimely.  Alabbassi's claims are therefore unexhausted and were properly dismissed.").  Accordingly, there is no genuine issue of material fact that these four claims also remain unexhausted.

Moreover, the agency also notified Plaintiff that under part 29 C.F.R. § 1614.105(a)(1), an aggrieved person must initiate contact with an EEOC Counselor within 45 days of the date of the matter alleged to be discriminatory.  (Rec. doc. 16-4 at 33 n.1); *Green*, 578 U.S. at 552-53.  The agency noted that 45 days prior to Plaintiff's date of contact with the EEOC counselor was June 26, 2020.  (Rec. doc. 16-4 at 33 n.1).  Therefore, any discrete acts that occurred before June 26, 2020 were untimely and therefore remain

unexhausted.  That June 26, 2020 deadline would preclude Plaintiff from seeking redress on Claim Nos. 1-12 as they occurred before June 26, 2020, although such claims may be considered as part of the overall discrimination claim.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002) (finding that untimely claims may constitute relevant background evidence in a proceeding in which the status of a current practice is in dispute). Accordingly, after considering the pleadings and the case law, the Court finds that Plaintiff's Complaint is limited to Claim Nos. 15-17 as these are the only claims that were timely administratively exhausted.  However, and as noted above, *Morgan* does not preclude Plaintiff from introducing evidence of Claim Nos. 1-12, 13, 14, and 18 to support Defendants' allegedly retaliatory discharge.

Plaintiff's only rebuttal to Defendants' arguments and the case law is that Defendants' motion is premature because no discovery has yet occurred.  While this Court recognizes that it has the discretion to deny a motion for summary judgment as premature before discovery occurs, *see Sewell v. Sewerage & Water Bd. of New Orleans*, F. App'x 288, 291 (5th Cir. 2017), the Court finds that no fact discovery was necessary to oppose Defendants' motion, which relied only on legal arguments and not factual ones.

## IV.     Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Motion to Dismiss and Motion for Partial Summary Judgment (rec. doc. 16) filed by Defendants is **GRANTED**.  Plaintiff's Title VII claim of retaliatory discharge in this lawsuit is limited to Claim Nos. 15-17 in Plaintiff's third  administrative complaint.

New Orleans, Louisiana, this 31st day of _____ January _____, 2024.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**