**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**KAILYN FLETCHER**                                                    **CIVIL ACTION**

**VERSUS**                                                             **NUMBER: 23-1344**

**UNITED STATES POSTAL SERVICE, ET AL.**                  **DIVISION "5"**

**ORDER AND REASONS**

Before the Court is the Motion for Summary Judgment (rec. doc. 36) filed by

Defendant  Louis DeJoy, Postmaster General, United States Postal Service.[1]  Plaintiff Kailyn

Fletcher filed no opposition to the motion as required by the local rules of this Court.

Having reviewed the motion and the case law, the Court rules as follows.

**I.       Factual Background**

Fletcher, a gay, African-American female, was formerly a Postal Service employee at

the Covington, Louisiana Post Office, employed as a Sales Services Distribution Associate

("SSDA").  (Rec. docs. 1, 36-2 at ¶ 3).  As an SSDA, Fletcher was considered to be in the

"clerk craft."  (*Id.*).

The Covington Post Office ("CPO") is a large post office that, during 2019 and 2020,

had approximately 100 employees, 15 of whom were in the clerk craft.  (Rec. doc. 36-3 at ¶

4).   In 2020, Torrey Harris was the Postmaster of the CPO, and three supervisors who

directly managed the employees at the CPO, Robert Robertson, Cherie Flemmings, and Tar

McMillan, reported to him.  (Rec. doc. 36-2 at ¶ 4).

Harris frequently walked around the CPO to assist with tasks and mingle with the

employees.  (*Id.* at ¶ 5).  In 2020, while walking around the CPO, Harris encountered a

couple of Fletcher's coworkers near the post office boxes and asked if they knew of

---

[1] This Court already dismissed the United States Postal Service as an improper Defendant.  (Rec. doc. 23).

Fletcher's whereabouts.  (*Id.* at ¶ 6).  The employees said that they did not know but suggested that Fletcher could be in the bathroom sleeping.  (*Id.*).  Harris started to notice Fletcher's frequent absences from the work floor.  (*Id.*).  On more than one occasion, Fletcher's coworkers suggested that Fletcher behaved "oddly" at times and smelled "weird."  (*Id.*).  Coworkers also told Harris that, on occasion, Fletcher could barely stand up and needed to lean on a cart.  (*Id.*).

Harris met with Fletcher and her union representative on two separate occasions to discuss her workplace behavior.  (*Id.* at ¶ 7).  During these two meetings, Harris offered Fletcher an Employee Assisted Program ("EAP").  (*Id.*).  An EAP is a voluntary, work-based program that offers free and confidential assessments, short-term counseling, referrals, and follow-up services to employees who have personal and/or work-related problems. (*Id.*).  Fletcher declined the EAP.  (*Id.*).

Concerned about Fletcher's behavior, Harris contacted Labor Relations to determine how to proceed.  (*Id.* at ¶ 8).  Harris was advised to contact the Postal Services' Office of Inspector General ("OIG").  (*Id.*).  OIG is the entity responsible for investigating internal Postal Service issues.  (*Id.*).  In May 2020, Harris contacted OIG to explain the issues related to Fletcher, not knowing if Fletcher was sleep deprived or abusing alcohol and/or drugs.  (*Id.* at ¶ 9).  OIG advised that they would investigate but did not provide Harris with details of its impending investigation, such as the dates of any intended visits. (*Id.*).

OIG conducted surveillance at the Covington Post Office on seven separate occasions between May 11, 2020 and June 29, 2020.  (*Id.* at p. 7).  On each surveillance date, Special

Agents Richard Harlow and/or Melissa Mitchum observed Fletcher exiting the post office and sitting in her 2015 Mercedes Benz sedan during her breaks.  (*Id.* at pp. 7-8).

On the morning of June 29, 2020, Fletcher's vehicle was parked in the rear employee parking lot.  (*Id.* at p. 8).  Harlow and Mitchum witnessed Fletcher exit the post office and enter her vehicle.  (*Id.*).  Harlow knocked on Fletcher's driver side window and identified himself.  (*Id.*).  Both OIG agents presented their badges and credentials to Fletcher.  (*Id.*).

Harlow asked Fletcher to exit her car, and she complied.  (*Id.*).  When she opened the car door, Harlow immediately smelled the distinct odor of marijuana emitting from Fletcher's car.  (*Id.*).  Harlow also observed two large plastic bags on the front passenger seat that resembled bags used to store marijuana.  (*Id.*).  Harlow had received narcotics detection training at both the Connecticut Police Academy and Federal Law Enforcement Training Center.  (*Id.*).  In his report, Harlow noted that he had personally seized significant amounts of marijuana while acting in his capacity as a police officer, detective, and Federal Special Agent.  (*Id.*).

Harlow asked Fletcher if she had been smoking marijuana in her car, and she denied it.  (*Id.*).  Harlow and Mitchum walked with Fletcher to a posted sign within the Postal Service's employees' parking lot to demonstrate their authority to search her vehicle.  (*Id.*).  The sign stated: "NOTICE: Vehicle[s] and their contents in Non-Public areas of Postal Property are subject to inspection (39 C.F.R. Part 232.1(B)(2))."  (*Id.*).[2]

---

[2] 39 C.F.R. Part 232.1(B)(2) reads:

> 2) Vehicles and their contents brought into, while on, or being removed from restricted nonpublic areas are subject to inspection.  A prominently displayed sign shall advise in advance that vehicles and their contents are subject to inspection when entering the restricted nonpublic area, while in the confines of the area, or when leaving the area. Persons entering these areas who object and refuse to consent to the inspection of the vehicle, its contents, or both, may be denied entry; after entering the area without objection,

Fletcher consented to a vehicle search that revealed marijuana residue in the driver's side door jam and two plastic bags containing a green leafy substance on the front passenger seat.  (*Id.* at pp. 8-9).  After obtaining a positive field test result for marijuana, Laura Aucoin, Covington Police Department Officer, arrived at Harlow's request and took possession of and retained the marijuana and packaging.  (*Id.*).  Aucoin then arrested Fletcher for a violation of Louisiana Revised Statute § 40:966 – Possession of Narcotics.  (*Id.*).  Aucoin issued a criminal summons to Fletcher and, after Fletcher signed the summons, released her with a promise to appear in court on November 20, 2020.  (*Id.*).

As a result of the OIG agents' findings, Harris immediately placed Fletcher on "Emergency Placement."   (*Id.* at ¶ 14; *see also* rec. doc. 363 at pp. 4-5).  Harris then instructed Supervisor Robert Robertson to conduct investigative interviews of Fletcher and the three coworkers who had earlier described Fletcher's workplace behavior.  (Rec. doc. 36-2 at ¶ 15).

On July 8, 2020, Robert Robertson conducted an Investigative Interview of Fletcher, who was accompanied by her union representative, Danny Bergeron.  (Rec. doc. 36-3 at pp. 6-10).  During the interview, Fletcher advised that several family members and friends drove and rode in her car, implying that the marijuana found could have belonged to others. (*Id.* at p. 7).

On July 24, 2020, Robertson conducted interviews with three of Fletcher's coworkers regarding her workplace behavior and/or her use of marijuana. (Rec. soc. 36-3 at ¶ 11).  A union representative attended each of the three interviews.  (*Id.*).  One of the witnesses, Elisa Hurst, reported that she had spoken to a coworker about Fletcher's

---

consent shall be implied.  A full search of a person and any vehicle driven or occupied by the person may accompany an arrest.

behavior change after returning from her breaks.  (*Id.* at p. 15).  Fletcher's eyes would be red, and she behaved "real mellow" after her breaks.  (*Id.*).  Another witness, Irene Brown, stated that she had discussed with others Fletcher's behavior and weird smell after returning from break or at other times during the workday.  (*Id.* at p. 17).  Witness Melissa Hutchinson recalled that she had a conversation with colleague Elisa Hurst about Fletcher's smell upon returning from breaks.  (*Id.* at p. 18).  Hutchinson noted that Fletcher would be "more calm, mellow, laid back" with red blood-shot eyes after returning from her breaks.  (*Id.* at p. 19).  Finally, Hutchinson noted that Fletcher always took her breaks, including lunch, in her car and would have a different attitude after them.  (*Id.* at p. 20).

On July 28, 2020, Robertson issued a Notice of Removal to Fletcher for the charge of Unacceptable Conduct.  (*Id.* at ¶ 15).  Harris concurred in this removal decision.  (*Id.*).  The decision to terminate Fletcher from the Postal Service was based on OIG's findings as set forth in its Investigative Report, the investigative interviews of Fletcher and three of her coworkers, and the rules of behavior set forth in the Postal Service Employee and Labor Relations Manual.  (Id. at ¶ 16).

Fletcher, through her union, the American Postal Workers' Union, challenged her removal through the grievance process.  (Rec. doc. 36-2 at ¶ 18).  An arbitration hearing was held on April 16, 2024.  (*Id.*).  On June 24, 2024, Fletcher's grievance was denied based on the finding that the Postal Service met its burden of proving that the Notice of Removal was issued for just cause.  (*Id.*).

## II.    Procedural Background

Before the grievance process had concluded, on April 21, 2023, Fletcher filed her Complaint in this Court in which she alleges unlawful retaliation and retaliatory discharge

under Title VII of the Civil Rights Act, 42 U.S.C. §§ 42 U.S.C. § 2000(e)-2 and (e)-3(a).  Due to

the vague allegations and the 181 paragraphs in the Complaint, Defendants DeJoy and the

United States Postal Service[3] filed a Motion to Dismiss and Motion for Partial Summary

Judgment.  (Rec. doc. 16).  Fletcher opposed the motion.  (Rec. doc. 20).

On January 31, 2024, this Court dismissed all claims arising before September 23,

2019, because all such claims were barred by a settlement agreement between Fletcher

and the Postal Service. (*Id.* at 12).  Additionally, this Court found only three of 18 claims set

forth in Fletcher's third EEO administrative complaint were timely exhausted

administratively.  (*Id.* at 12, 16).  Therefore, the Court found that Fletcher's Title VII claim

of retaliatory discharge was limited to claim numbers 15-17 in her third administrative

complaint.  (*Id.* at 16).  Per the Court's Order, the following claims are the only viable

claims:

> 15. On June 29, 2020, your vehicle was searched by the OIG which led to you being placed on Emergency Placement on July 3, 2020, and subsequently you were terminated;
> 16. On numerous occasions in June, you were told to report to management when you used the restroom and management stood outside until you came out; and
> 17. On dates to be specified, the Postmaster made racist comments about your hair and physical appearance.

(Rec. Doc. 16-4 at 34).

### III.   Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed.

---

[3] *See supra* n.1.

R. Civ. P. 56(c)).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial."  *Id.*  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact.  *Id.* at 323.  If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact.  *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The substantive law identifies which facts are material.  *Id.*  Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).  "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment.  *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994).  In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence.  *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  Further, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment.  *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of*

*Arlington*, 246 F.3d 500, 502 (5th Cir. 2001).  Yet a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial.  *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2).  Such facts must create more than "some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden.  *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B).  Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted.  *See Little*, 37 F.3d at 1075-76.

## IV.     Law and Analysis

Title VII generally prohibits discrimination against an employee on the basis that she has engaged in protected activity.  *See* 42 U.S.C. § 2000e-3(a).  Although the sections of Title VII that apply to federal employees do not expressly prohibit retaliation, the Fifth Circuit has held that "§ 2000e-16 bars retaliation" against federal employees as well. *Brazoria Cnty. v. E.E.O.C.*, 391 F.3d 685, 690 (5th Cir. 2004).

To establish a *prima facie* case for unlawful retaliation, a plaintiff must show (1) that she engaged in activity protected by Title VII, (2) that an adverse employment action

occurred, and (3) that a causal link existed between the protected activity and the adverse employment action. *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996) (quoting *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983)).

The *McDonnell Douglas Corp. v. Green* framework applies to Title VII unlawful retaliation cases. 411 U.S. 792, 802-04 (1973). As such, if a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Long*, 88 F.3d at 305. If the defendant produces evidence that would "permit the conclusion that the adverse employment action was nondiscriminatory," the burden shifts to the plaintiff to show that "but for" the protected activity, the adverse employment action would not have occurred. *Id.* at 305 & n.4.

DeJoy does not dispute that Fletcher engaged in a protected activity when she filed her EEO administrative complaints or that she was later terminated. He argues only that Fletcher cannot establish the causal connection element between the withdrawal of her third EEO complaint and her termination.

Fletcher contacted an EEO counselor on June 12, 2019, which generated a complaint designated as Agency No. 4G-700-0137-19. (Rec. Doc. 16-4 at ¶ 9). Fletcher signed a Withdrawal of Complainant of Discrimination form on September 23, 2019, which withdrew all of the claims raised in Agency No. 4G-700-0137-19. (*Id.*). Fletcher was later terminated on July 28, 2020. (Rec. doc. 36-3 at pp. 21-23).

DeJoy contends that the temporal proximity between the September 2019 withdrawal of her EEO complaint and her July 2020 termination is too remote to establish the causal connection element without other evidence of retaliation. The Fifth Circuit has

held that "that a six-and-a-half-week timeframe is sufficiently close, but that a five month

[sic] lapse is not close enough, without other evidence of retaliation, to establish the 'causal

connection' element." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020)

(citations omitted). Here, the Court finds that the 10-month lapse is too remote to establish

the causal connection element of Fletcher's *prima facie* case, especially given that Fletcher

has provided <u>no other evidence</u> of retaliation. *See, e.g., Rein v. Honeywell Int'l Inc.*, 362 Fed.

App'x 395, 398 (5th Cir. 2010) (finding that a 10-month differential between the

discrimination complaint and adverse employment action is insufficient to show a causal

link); *Harvey v. Stringer*, 113 F. App'x 629, 631 (5th Cir. 2004) ("However, a period of 10

months elapsed between Harvey's EEOC charge in January 2001 and his termination in

October 2001. This Court has never held that a 10–month time lapse, on its own, is

sufficient to satisfy the causal connection for summary judgment purposes."); *Grizzle v.*

*Travelers Health Network, Inc.*, 14 Fed. App'x 261, 268 (5th Cir. 1994) (finding a 10-month

period between protected activity and adverse employment action suggests that a

retaliatory motive is highly unlikely).

To interrupt the 10-month lapse and to support her claims of retaliatory discharge,

Fletcher alleges that she was told to report to management when she used the restroom

and that management stood outside until she came out. (Rec. Doc. 1 at ¶¶ 146-147).

Fletcher also claims that Harris made racist comments about her hair and physical

appearance. (*Id.* at ¶ 142). The Court notes, however, that these are no more than mere

allegations. Because Fletcher failed to file an opposition to DeJoy's motion for summary

judgment, she has provided this Court with no proof of any sort that these things ever

occurred.

Even so, DeJoy has submitted to the Court evidence that all clerk craft at the CPO must advise a supervisor when they need a break.  (Rec. doc. 36-3 at ¶ 6).  This rule was in place in 2020 and continues to be the policy at the CPO today.  (*Id.*; rec. doc. 36-4 at ¶ 4). Fletcher was thus not the only employee required to inform her supervisor of her whereabouts.  **Unsupported** allegations about a rule indiscriminately applicable to all clerks at the CPO cannot interrupt the 10-month lapse between the withdrawal of Fletcher's third EEO complaint and her termination.

And Harris made only a single comment about Fletcher's hair seemingly appearing heavy.  (Rec. doc. 36-2 at ¶ 19).  As a bald man, Harris explained that he imagined that Fletcher's head would hurt with all that hair.  (*Id.*).  In *Jackson v. Cal-W. Packaging Corp.*, the Fifth Circuit noted:

> We have explained that comments are evidence of discrimination only if they are 1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue. Comments that do not meet these criteria are considered stray remarks, and standing alone, are insufficient to defeat summary judgment.

602 F.3d 374, 380 (5th Cir. 2010) (footnotes and quotations omitted).  While Harris admits that he "unthinkingly" made this comment, Fletcher has not provided evidence that the comment occurred proximately in time to her termination.  (Rec. doc. 36-2 at ¶ 19).

Moreover, even more damning to Fletcher's claim, and even had she met her burden to establish a *prima facie* case, DeJoy has produced evidence sufficient to demonstrate that Fletcher's termination was nondiscriminatory and for legitimate reasons.  *Long*, 88 F.3d at 305 & n.4.  As noted above, on more than one occasion, Harris noticed Fletcher's absence from the work floor.  (Rec. doc. 36-2 at ¶ 6).  Three coworkers reported issues with

Fletcher's workplace behavior including her red eyes, funny smell, and apparent sleepiness after breaks.  Based on these reports, Harris contacted OIG who surveilled the CPO on seven separate occasions.  (*Id.* at pp. 4-10).  OIG's surveillance ended in a search of Fletcher's car that revealed a strong odor of marijuana and two large plastic bags of marijuana on the front passenger seat of her car.  (*Id.* at p. 5).  On the same date, Fletcher was arrested by a Covington Police Officer for possession of narcotics.  (*Id.* at p. 6).

The Postal Service's stated reason for terminating her – Fletcher's charge of unacceptable conduct due to illegal drug use and possession on postal premises – is legitimate and nondiscriminatory.  The ultimate burden of persuading the trier of fact of DeJoy's discriminatory retaliation remains at all times with Fletcher, who ultimately must show that but for her participation in the protected activity, the Postal Service would not have taken the adverse employment action.  *See Long*, 88 F.3d at 305 & n. 4 (5th Cir. 1996).  Fletcher cannot do so as the Postal Service would have terminated her for unacceptable conduct despite the filing of any EEO complaint.

**V.     Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that the Motion for Summary Judgment (rec. doc. 36) is **GRANTED**.

New Orleans, Louisiana, this __30th__ day of __September__ 2024.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE